FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Dec 3, 2024
OFFICE OF THE CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| Demario Lashun Hankins, also known as Demar Bey, | ) |
| *Plaintiff,* | ) |
| v. | ) Case No. 4:24-cv-04119 |
| William J. Bryant, Richard Turner, Jeffie Walker, Penny Kilcrease, Correctional Officer Studdard, Trooper Dale Young, Judge Thomas Potter, Prosecutor David Cotton, and the Miller County Jail, | ) |
| *Defendants* | ) |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## I. INTRODUCTION

**1.** Plaintiff, Demario Lashun Hankins, also known as Demar Bey, brings this action under 42 U.S.C. § 1983 and related federal statutes for violations of his constitutional rights arising from wrongful and false arrest, excessive force, malicious prosecution, et cetera. The Defendants' actions have caused Plaintiff severe personal and financial harm, as well as enduring psychological trauma, leading him to seek injunctive relief and damages to restore his rights and prevent further injustices. Plaintiff is a military veteran with an honorable discharge and no criminal record prior to the events described herein. He brings this suit to vindicate his rights, which were unlawfully violated by law enforcement officers and jail personnel acting under color of state law.

## II. JURISDICTION AND VENUE

**2.** This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343, as they arise under the U.S. Constitution and federal civil rights laws.

**3.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred within the Western District of Arkansas.

## III. PARTIES

**4.** Plaintiff, at all times relevant to this action, was a resident of Arkansas held in detention at the Miller County Jail.

**5.** Defendants, at all times relevant to this action, acted under color of state law as officers, officials, and employees of Miller County and the State of Arkansas. Each Defendant directly participated in, or failed to prevent, the constitutional violations alleged herein.

## IV. FACTUAL BACKGROUND

### A. The Initial Traffic Stop and Arrest

**6.** On May 5th, 2022, Plaintiff was traveling through Texarkana, Texas, when Trooper Dale Young initiated a traffic stop. Plaintiff was pulled over for minor infractions, including obstruction of governmental operations and speeding. Despite the nature of these minor infractions, Trooper Young escalated the situation by detaining Plaintiff and transporting him across state lines to Miller County Jail in Texarkana, Arkansas. Trooper Young's actions amounted to false imprisonment and malicious prosecution, grounded in racial profiling and bias against Plaintiff's use of an alternative identification, an ID registered under Demar Bey with the Arkansas Department of Finance and Administration.

### B. Mishandling and Detainment at Miller County Jail

**7.** Upon arrival at Miller County Jail, Plaintiff was placed in a holding cell and denied access to a phone call or an opportunity to communicate with family or legal counsel. Correctional Officer Studdard, who was responsible for Plaintiff's intake, failed to follow standard booking procedures, leaving Plaintiff in detention for an extended period without explanation. Plaintiff requested to speak with a senior officer or the sheriff, as he was confused about the reasoning behind his detention and felt his rights were being violated.

### C. Excessive Force by Correctional Officer Studdard

**8.** Correctional Officer Studdard eventually removed Plaintiff from the holding cell and escorted him to the fingerprinting room. When Plaintiff, still unclear on the nature of his detention, requested to speak with Studdard's supervisor, Studdard threatened him with pepper spray if he did not comply with the fingerprinting process. Without warning, Studdard sprayed Plaintiff in the face multiple times, causing severe pain, temporary blindness, and panic. As Plaintiff attempted to shield himself, Studdard struck him repeatedly, despite Plaintiff's lack of resistance. Plaintiff instinctively grabbed Studdard's vest to stabilize himself, resulting in both of them falling to the floor, where Studdard continued his assault with assistance from an inmate whom he had pre-positioned for backup.

Studdard's actions were not only excessive but appeared to be premeditated, as evidenced by the presence of the inmate "on standby" and Studdard's contradictory statements about the incident. Studdard's conduct in this encounter, which involved clear misuse of force on a non-threatening detainee, violated Plaintiff's rights under the Eighth and Fourteenth Amendments.

D. **Malicious Prosecution and Coercion into a Plea Deal**

**9**. Following these events, Plaintiff faced baseless felony charges of Aggravated Battery, elevated by false reports from Studdard and Deputy Pendergrass, who claimed, without credible basis, that Plaintiff had resisted. These reports, contradicted by video and audio evidence, were later used to coerce Plaintiff into accepting a four-year probation term under extreme duress. Plaintiff, proceeding pro se and fearing prolonged detention, accepted the plea in hopes of addressing these injustices from outside jail.

E. **Consequences of Defendants' Actions on Plaintiff's Life**

**10**. As a direct result of Defendants' actions, Plaintiff has experienced homelessness, job denial, and ongoing emotional trauma. His reputation, financial stability, and physical health have been severely impacted, leaving him unable to recover without the relief sought in this suit.

## V. CLAIMS FOR RELIEF

### COUNT I: EXCESSIVE FORCE (42 U.S.C. § 1983)

**Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.**
**11**. Defendant Studdard's use of pepper spray and physical force without provocation constitutes excessive force in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Under 42 U.S.C. § 1983, Plaintiff brings this claim against Studdard, who acted under color of state law, abusing his authority as a correctional officer and demonstrating a reckless disregard for Plaintiff's rights and safety.

**Legal Standards and Constitutional Violations**

**12**. The Eighth Amendment's prohibition on cruel and unusual punishment and the Fourteenth Amendment's Due Process Clause protect detained individuals from the excessive use of force by state actors. The Supreme Court has held that excessive physical force against a person in custody is inherently suspect, and courts must consider whether the force used was excessive in light of the circumstances. In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Court established that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even if the prisoner does not suffer serious injuries. *Hudson* mandates that when force is used "maliciously and sadistically to cause harm," it crosses constitutional boundaries.

**13**. Similarly, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court clarified that a detainee may establish a violation of their due process rights by showing that force used against them was objectively unreasonable. Factors considered include the need for the application of force, the relationship between that need and the force used, the extent of the injury inflicted, and whether the force was applied in a good-faith effort to maintain discipline or maliciously to cause harm. Studdard's premeditated assault with pepper spray and repeated physical strikes, which left Plaintiff incapacitated, with blurred vision, and lasting psychological harm, unequivocally demonstrates excessive and unreasonable force in violation of Plaintiff's constitutional rights.

**Intent and Premeditation**

**14.** Studdard's actions demonstrate a calculated intent to inflict harm upon Plaintiff. By positioning another inmate in the booking area, ostensibly to assist, Studdard prepared for an orchestrated assault, leveraging his authority to cause physical harm and secure compliance through fear. This premeditated arrangement adds a layer of egregious misconduct and raises questions of intent, which further distinguish this case from situations where force may be justified for legitimate security purposes. Case law, such as *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973), has held that premeditated violence by state actors under the guise of duty crosses the threshold into unconstitutional conduct, especially when the intent is to harm, not maintain order.

**Objective Unreasonableness**

**15.** Here, Studdard's actions meet the test of objective unreasonableness as defined by *Kingsley* and later cases such as *Graham v. Connor*, 490 U.S. 386 (1989), which emphasize that the force must align with a legitimate need. Plaintiff posed no physical threat, did not resist, and merely requested clarification before complying with fingerprinting. When Plaintiff asked to speak to a supervisor, Studdard had a duty to respond appropriately rather than resort to violence. The gratuitous use of pepper spray, a tactic commonly associated with controlling violent or uncooperative detainees, and the subsequent physical attack were objectively unreasonable responses to Plaintiff's behavior.

**Compensatory and Punitive Damages**

**16.** Plaintiff seeks compensatory damages for the physical pain, emotional trauma, and humiliation resulting from Studdard's actions. Additionally, punitive damages are justified as Studdard's conduct exhibited wanton disregard for Plaintiff's rights. The Supreme Court has upheld punitive damages in cases where the defendant's actions demonstrate "reckless or callous indifference" to federally protected rights (*Smith v. Wade*, 461 U.S. 30, 56 (1983)).

## COUNT II: FALSE IMPRISONMENT (42 U.S.C. § 1983)

**17.** Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein. Defendants, acting under color of state law, unlawfully detained Plaintiff without probable cause, denying him procedural safeguards and access to legal counsel. This unlawful detention, or false imprisonment, constitutes a violation of Plaintiff's Fourth Amendment rights, as well as his substantive due process rights under the Fourteenth Amendment.

**Legal Standards and Deprivation of Liberty**

**18.** False imprisonment claims brought under 42 U.S.C. § 1983 are based on the principles of the Fourth and Fourteenth Amendments. The Fourth Amendment protects individuals against unreasonable seizures, which include arrests and detentions lacking probable cause. False imprisonment occurs when an individual is detained without legal justification. In *Manuel v. City of Joliet*, 580 U.S. 357 (2017), the Supreme Court reaffirmed that detention without

probable cause—even if supported initially by legal proceedings—can still constitute a Fourth Amendment violation if there is no valid basis for the continued detention. Here, Plaintiff was detained on minor traffic infractions, which are not offenses warranting prolonged custody. The lack of probable cause, combined with Defendants' deliberate decision to hold Plaintiff without access to legal representation, stripped Plaintiff of his liberty and deprived him of basic procedural protections.

**19.** The Supreme Court's decision in *Baker v. McCollan*, 443 U.S. 137 (1979), also addresses situations where detention without timely judicial oversight or access to legal resources can amount to false imprisonment under § 1983. In *Baker*, the Court held that detaining an individual without providing an opportunity to secure legal representation constitutes a deprivation of liberty, even if the arrest itself was initially lawful. By detaining Plaintiff for an extended period without booking him, without offering access to a phone call, and without permitting legal consultation, Defendants engaged in conduct that infringed on his Fourth Amendment rights. This unlawful detention, based on unsubstantiated charges, transformed what should have been a routine traffic citation into a prolonged and unjustified confinement, demonstrating the abuse of discretion and disregard for due process.

**Violation of Probable Cause Requirements**

**20.** Probable cause is a fundamental requirement for any lawful detention, especially under the Fourth Amendment. Probable cause exists only when law enforcement officers have knowledge of facts that would lead a reasonable person to believe that the individual has committed or is committing a crime. Here, Plaintiff's alleged offenses—minor traffic infractions and use of an alternative identification—are not serious enough to justify an extended detention, especially across state lines. The Supreme Court, in *Brinegar v. United States*, 338 U.S. 160 (1949), held that probable cause must be based on facts known at the time, not on conjecture or prejudice. Defendants' failure to establish probable cause was compounded by racial bias, as they pursued extended detention without sufficient legal basis, infringing upon Plaintiff's constitutional rights.

**21.** Additionally, the act of transporting Plaintiff from Texas to Arkansas for minor infractions further illustrates the lack of probable cause and proper justification for his detention. In *Dunaway v. New York*, 442 U.S. 200 (1979), the Supreme Court held that a mere suspicion or minor violation cannot justify detention or arrest without proper probable cause. Trooper Young's decision to transport Plaintiff across state lines for traffic violations was excessive, particularly since the minor nature of the infractions warranted only a citation. This overreach and subsequent detention demonstrate that Defendants used their authority to unlawfully imprison Plaintiff, acting outside the bounds of reasonableness and constitutional law.

**Prolonged Detention and Denial of Access to Legal Counsel**

**22.** A critical aspect of due process under the Fourteenth Amendment is the right to challenge one's detention and have access to legal counsel. The Due Process Clause prohibits any form of detention without due process safeguards, which include timely judicial review, access to an attorney, and the opportunity to contest the legality of one's confinement. In *Zadvydas v. Davis*,

533 U.S. 678 (2001), the Supreme Court ruled that prolonged detention without judicial oversight or access to legal resources infringes upon a person's liberty interest, stating that "freedom from bodily restraint has always been at the core of liberty."

**23**. In Plaintiff's case, Defendants did not merely delay booking him; they also denied him access to any form of legal counsel or the ability to communicate with family, leaving him isolated and unable to seek relief. This extended confinement without basic procedural protections deprived Plaintiff of his right to due process. The Constitution protects individuals against such arbitrary and indefinite detentions, particularly where detainees have no ability to contact an attorney or challenge their confinement.

**24**. The denial of access to counsel constitutes a severe violation of Plaintiff's due process rights, as held in *Moran v. Burbine*, 475 U.S. 412 (1986), where the Court reaffirmed that the denial of access to an attorney during critical stages of detention violates due process. Defendants' refusal to allow Plaintiff a phone call or contact with legal representation heightened his sense of vulnerability, denying him the opportunity to exercise his rights to a fair and just defense. Without access to counsel, Plaintiff was rendered defenseless against the state's arbitrary and unlawful actions, amplifying the gravity of the constitutional violations committed by Defendants.

**Procedural Due Process and Liberty Interests**

**25**. Procedural due process requires that any detention must be carried out with fundamental safeguards to prevent wrongful imprisonment. A failure to observe these protections—such as by denying Plaintiff a phone call, a fair hearing, and access to legal representation—violates the liberty interests protected by the Fourteenth Amendment. The Supreme Court's ruling in *Zadvydas v. Davis* underscores that freedom from arbitrary detention is a core liberty interest, safeguarded by procedural due process requirements. Defendants' deliberate decision to withhold procedural protections and legal access during Plaintiff's detention reveals an abuse of authority that strikes at the heart of due process rights.

**26.** By keeping Plaintiff isolated without recourse or representation, Defendants violated established constitutional principles that protect against the deprivation of liberty. This lack of due process, coupled with Defendants' disregard for Plaintiff's procedural rights, reflects a systematic abuse of power that deprives individuals of a fair opportunity to contest their confinement. The prolonged detention and refusal of basic legal rights were calculated actions that subjected Plaintiff to conditions that inherently violated his liberty interests under the Fourteenth Amendment.

**Damages**

**27**. As a result of this false imprisonment, Plaintiff suffered significant harm, including physical and emotional distress, humiliation, economic loss, and reputational damage. Plaintiff seeks compensatory damages to address the severe personal and financial impact of his unlawful detention. The deprivation of liberty not only caused immediate harm but also left lasting psychological effects, as Plaintiff endured isolation, fear, and distress without just cause.

**28**. In addition to compensatory damages, Plaintiff seeks punitive damages to deter such arbitrary and unlawful detentions by state actors in the future. Punitive damages are warranted because Defendants' conduct was not only unconstitutional but also intentional and egregious. By acting with reckless disregard for Plaintiff's constitutional rights, Defendants engaged in conduct that shocks the conscience, justifying an award that serves both as a punishment and a warning against future violations. Such an award would signal that abuse of authority and disregard for due process will not be tolerated in a society that values individual liberty and justice.

**29**. In conclusion, Defendants' actions in unlawfully detaining Plaintiff without probable cause, procedural protections, or access to legal counsel violated his Fourth and Fourteenth Amendment rights. The arbitrary detention, grounded in a lack of legal justification and racial bias, inflicted profound harm on Plaintiff's personal, professional, and emotional well-being. Plaintiff respectfully requests that the Court find in his favor on this count and award both compensatory and punitive damages as appropriate, to remedy the injustice suffered and to deter future abuses of power by state actors.

## COUNT III: MALICIOUS PROSECUTION (42 U.S.C. § 1983)

**30**. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein. Defendants, including prosecuting attorneys, knowingly pursued felony charges against Plaintiff based on falsified reports and without probable cause. This constitutes malicious prosecution, a violation of Plaintiff's right to due process and a fair legal process under the Fourth Amendment. Through these actions, Defendants deprived Plaintiff of his liberty without just cause, violating his fundamental rights and resulting in serious, lasting harm.

### Constitutional Basis for Malicious Prosecution Claims

**31**. Malicious prosecution under 42 U.S.C. § 1983 arises when a state actor engages in an unjustified criminal prosecution that leads to a deprivation of liberty in violation of the Fourth Amendment. In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court recognized the potential for § 1983 claims when malicious prosecution leads to a loss of liberty due to the misuse of the criminal justice process. Here, the felony charge of Aggravated Battery against Plaintiff was premised on the false and misleading reports by Correctional Officer Studdard and other officials at Miller County Jail, who sought to justify their unlawful use of excessive force by fabricating evidence that portrayed Plaintiff as a violent aggressor.

**32**. In *Hartman v. Moore*, 547 U.S. 250 (2006), the Court further clarified that when prosecution is driven by improper motives—particularly retaliatory animus—and lacks probable cause, it constitutes a violation of constitutional rights. In Plaintiff's case, Defendants lacked any reasonable basis to charge him with felony Aggravated Battery, especially given that Plaintiff was acting in self-defense during the incident with Studdard, who had previously threatened him and shortly after pepper sprayed the plaintiff and initiated physical contact. The decision to prosecute Plaintiff was driven not by a legitimate pursuit of justice, but by a retaliatory intent to shield Studdard and other officials from accountability for their own misconduct.

**Absence of Probable Cause and Abuse of Process**

**33.** Probable cause requires that law enforcement have a reasonable basis to believe a crime has been committed. In Plaintiff's situation, however, there was no such basis. Probable cause was clearly lacking, as the evidence shows that Plaintiff was defending himself against Studdard's assault rather than initiating aggression. Plaintiff's nonviolent request to speak with a supervisor, and his initial compliance before Studdard escalated the encounter, further support the lack of probable cause.

**34.** The prosecution's actions represent an abuse of the judicial process aimed at punishing Plaintiff for exercising his right to resist unlawful force. The malicious intent behind these actions is evident from the Defendants' efforts to construct a narrative that would support felony charges despite the contradictory evidence, including video and audio recordings that contradicted Studdard's claims. This abuse of process not only harmed Plaintiff but also undermined the integrity of the justice system, as the charges served primarily to protect Studdard and jail officials from accountability for their actions rather than to uphold public safety.

**Fabricated Evidence and Coercive Tactics**

**35.** The prosecution's reliance on fabricated evidence constituted a fundamental violation of Plaintiff's right to due process. False evidence and coerced testimony are unequivocally condemned under constitutional law. The Supreme Court in *Napue v. Illinois*, 360 U.S. 264 (1959), held that the use of false evidence to secure a conviction violates due process, regardless of whether the prosecuting authorities knew or should have known of its falsity. In this case, the Defendants' fabrication of evidence against Plaintiff was a deliberate attempt to manipulate the judicial system, constituting malicious prosecution and a violation of Plaintiff's constitutional rights.

**36.** Further, Plaintiff's coerced plea under duress violated his right to a fair trial. Facing prolonged detention and inhumane conditions, Plaintiff felt compelled to accept a plea deal to escape these intolerable circumstances. The Supreme Court in *Brady v. United States*, 397 U.S. 742 (1970), recognized that a plea is not voluntary if obtained through coercion or undue influence. Here, Plaintiff's plea was the product of duress, as he was left without effective legal options or access to a fair trial due to the Defendants' misconduct. The coercive tactics employed by Defendants, including the threat of prolonged incarceration and worsening jail conditions, left Plaintiff with no choice but to accept a plea as a means of survival. These actions deprived Plaintiff of a fair legal process and amount to malicious prosecution.

**Pattern of Retaliatory Animus and Selective Prosecution**

**37.** The Defendants' decision to prosecute Plaintiff for Aggravated Battery reflects a pattern of retaliatory animus, as they sought to penalize him for attempting to defend himself against excessive force. In *Hartman v. Moore*, the Supreme Court emphasized that when prosecution is driven by retaliatory motives rather than legitimate law enforcement goals, it constitutes a violation of constitutional protections. Plaintiff's charges, which were unsupported by probable

cause, illustrate selective prosecution—a tactic used to discredit and punish him for his lawful resistance to unlawful force.

**38.** Moreover, Plaintiff's experiences are not isolated; they appear to reflect a broader pattern of misconduct by Studdard, who has been implicated in multiple incidents of excessive force and retaliatory behavior against other detainees. The fact that Studdard was eventually terminated from Miller County Jail following further allegations of violence against inmates demonstrates the likelihood of a pattern of retaliatory prosecution against individuals who resisted his abuse. This pattern further substantiates Plaintiff's claim of malicious prosecution, as it reveals an ongoing practice of prosecuting detainees to cover up jail officials' own unlawful actions.

**Violation of the Right to a Fair Trial**

**39.**The malicious prosecution of Plaintiff infringed upon his constitutional right to a fair trial. The Sixth Amendment guarantees the right to an impartial legal process, which includes protection against the use of false evidence and the right to challenge the accusations against oneself. The Defendants' use of false reports, denial of access to key evidence, and reliance on coerced testimony effectively denied Plaintiff the opportunity to defend himself against unfounded charges. Such conduct is fundamentally incompatible with the notion of a fair trial and violates Plaintiff's Sixth and Fourteenth Amendment rights.

**40.** The Supreme Court has repeatedly affirmed that the right to a fair trial is indispensable to a functioning judicial system. In *Giglio v. United States*, 405 U.S. 150 (1972), the Court held that the prosecution's failure to disclose evidence affecting witness credibility can undermine the fairness of a trial. Similarly, in *Kyles v. Whitley*, 514 U.S. 419 (1995), the Court emphasized that due process requires the prosecution to disclose all exculpatory evidence, as nondisclosure risks an unjust verdict. In Plaintiff's case, the Defendants' manipulation of evidence and failure to provide a transparent legal process violated these principles, resulting in a compromised judicial outcome.

**41.** Plaintiff seeks compensatory and punitive damages for the mental anguish, economic loss, and reputational harm caused by Defendants' malicious prosecution. This includes the severe psychological impact of prolonged detention under false charges, the loss of income and career opportunities, and the enduring harm to Plaintiff's personal reputation and public standing. Additionally, Plaintiff seeks declaratory relief, requesting the Court to issue a finding that Defendants' conduct constituted malicious prosecution in violation of constitutional protections.

**42.** The harm Plaintiff has endured as a result of Defendants' malicious prosecution underscores the need for meaningful redress. Plaintiff's reputation and livelihood have been irreparably damaged, and the psychological impact of being wrongfully prosecuted has left lasting scars. By awarding damages, this Court can provide Plaintiff with some measure of relief, restore his dignity, and reinforce the principle that malicious prosecution is an abuse of authority that will not be tolerated within our legal system.

**43**. In sum, Defendants' decision to pursue felony charges against Plaintiff was driven not by legitimate law enforcement goals but by retaliatory motives and a desire to conceal their own misconduct. The fabricated evidence, coercive tactics, and selective prosecution all serve as clear evidence of malicious prosecution in violation of Plaintiff's Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Plaintiff respectfully requests that this Court hold Defendants accountable for their actions and grant the relief sought to remedy these constitutional violations.

## COUNT IV: DUE PROCESS VIOLATIONS (FIFTH AND FOURTEENTH AMENDMENTS)

**44**. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein. Defendants' actions in assaulting Plaintiff, denying him medical treatment, and coercing him into a plea agreement, individually and collectively, deprived Plaintiff of the due process protections afforded under the Fifth and Fourteenth Amendments. These due process violations constitute a serious breach of Plaintiff's constitutional rights, causing significant harm, trauma, and deprivation of his liberty without the fundamental protections guaranteed by the Constitution.

### Right to Fair Process and Procedural Due Process

**45**. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." This constitutional guarantee ensures that individuals are treated fairly and with dignity by the legal system, protecting them from arbitrary and unlawful actions by the state. Plaintiff's detention and coercion into a plea agreement without necessary procedural protections violated this core principle of due process.

**46**. In *Brady v. United States*, 397 U.S. 742 (1970), the Supreme Court held that a guilty plea must be made voluntarily and without coercion to be constitutionally valid. When the state leverages threats or conditions that compel an individual to plead guilty out of fear, the plea cannot be considered voluntary. Plaintiff's plea, given under duress, reflects exactly this type of coercion. The Defendants' denial of Plaintiff's basic rights, including his right to counsel and medical treatment, left him vulnerable and pressured to accept a plea deal as the only means to avoid prolonged detention and further harm.

**47**. Further, in *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court emphasized that due process must be afforded in all instances where a person's liberty is at stake. By failing to provide Plaintiff with adequate access to legal representation, medical attention, and a fair hearing, Defendants deprived Plaintiff of procedural safeguards required under the law, thus infringing upon his liberty interests without the benefit of due process.

### Denial of Medical Treatment as a Due Process Violation

**48**. Plaintiff was denied necessary medical treatment following an assault by Correctional Officer Studdard, which left him incapacitated, with temporary blindness, difficulty breathing, and considerable physical pain. This denial of medical care is both a violation of Plaintiff's

substantive due process rights and a failure of Defendants' duty to ensure the well-being of those in their custody. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment, violating the Eighth Amendment. Although Plaintiff was a pretrial detainee, the same standard applies under the Fourteenth Amendment as established in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), where the Court held that due process protections apply to detainees facing conditions amounting to punishment.

**49.** In this case, the failure to provide medical treatment was not incidental but deliberate and punitive. The actions of jail officials who refused Plaintiff's requests for medical attention, compounded by Studdard's assault, amounted to punishment before any adjudication of guilt. The deliberate denial of medical treatment following an unprovoked assault by a state actor constitutes a severe due process violation, reflecting the state's disregard for Plaintiff's health and safety.

**Coercion into a Plea Agreement Under Duress**

**50**. Plaintiff's coerced plea agreement represents a fundamental violation of his right to due process. Faced with the threat of continued abuse and confinement in an environment that had already proven hostile and abusive, Plaintiff accepted a plea agreement under conditions that were neither voluntary nor fair. *Brady v. United States* clarified that a plea must be entered "knowingly, intelligently, and voluntarily," a standard not met in Plaintiff's case, as he was deprived of the ability to make an informed, autonomous choice.

**51.** In addition to physical abuse and denial of medical care, Plaintiff was left without meaningful access to legal representation or recourse. This lack of access severely impacted Plaintiff's ability to challenge the charges or negotiate a fair outcome. *Moran v. Burbine*, 475 U.S. 412 (1986), held that due process includes the right to consult with an attorney before making critical decisions in criminal proceedings. Deprived of this right, Plaintiff was placed in an untenable position, effectively forced into a plea agreement as a means of survival.

**52.** The plea, secured under duress and without procedural protections, contravenes constitutional principles and renders Plaintiff's conviction invalid under *Boykin v. Alabama*, 395 U.S. 238 (1969), which established that due process requires a record affirmatively showing that a plea was entered voluntarily. Plaintiff's plea, however, was a product of coercive conditions created by Defendants.

**Substantive Due Process and Arbitrary Abuse of State Power**

**53.** The Fourteenth Amendment also protects individuals from arbitrary and abusive exercises of state power that "shock the conscience." In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Court held that substantive due process is violated when state actors engage in conduct that is arbitrary, oppressive, or egregiously unfair. Studdard's premeditated assault, coupled with the denial of medical care and coercion into a plea, constitutes precisely the type of arbitrary abuse that substantive due process aims to prevent.

54. Plaintiff's experience within the legal system was marred by punitive measures designed to degrade, intimidate, and coerce him, rather than uphold justice. The deliberate actions taken by Defendants to strip Plaintiff of his dignity, autonomy, and access to fair treatment violated his right to due process in its most basic form.

55. Plaintiff seeks compensatory damages for the physical injuries, psychological trauma, and reputational harm resulting from Defendants' due process violations. The distress, loss of personal dignity, and forced plea under duress are harms that require meaningful redress, as these violations have profoundly impacted Plaintiff's life. Plaintiff also seeks declaratory relief to formally recognize Defendants' actions as violations of his due process rights, and injunctive relief to prevent any further infringement on his liberty stemming from the unjustly coerced plea agreement.

56. In summary, the violations of due process were not isolated or incidental but formed a pattern of abuse and coercion that deprived Plaintiff of fundamental protections. Defendants' conduct represents a serious breach of constitutional standards, causing Plaintiff irreparable harm and undermining the integrity of the legal system. Plaintiff respectfully requests that this Court hold Defendants accountable for these actions and grant the requested relief to rectify the injustices suffered.

## COUNT V: RACIAL DISCRIMINATION (42 U.S.C. §§ 1981 and 1983)

57. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein. Defendants' actions were not only unconstitutional but were also driven by racial animus, constituting unlawful discrimination under 42 U.S.C. §§ 1981 and 1983. Racial discrimination in arrests, detention, and prosecution violates the Equal Protection Clause of the Fourteenth Amendment and the statutory protections established by federal law.

### Equal Protection Violations and Racial Profiling

58. The Equal Protection Clause of the Fourteenth Amendment mandates that no state shall "deny to any person within its jurisdiction the equal protection of the laws." When law enforcement officers and jail personnel treat individuals differently based on race, they violate this guarantee of equal protection. In *Whren v. United States*, 517 U.S. 806 (1996), the Supreme Court held that racial discrimination in police stops and detentions, when shown to lack legitimate basis, is unconstitutional and a violation of equal protection.

59. Plaintiff was targeted by Trooper Young and subsequently subjected to hostile treatment in Miller County Jail due to racial profiling. The baseless arrest on minor traffic infractions escalated into a fabricated felony charge, revealing an unjustified and discriminatory exercise of state power. Plaintiff's use of an alternate form of identification, though lawful, was weaponized by Defendants as pretext for racial discrimination, as evidenced by Trooper Young's arrest and transportation of Plaintiff to Miller County Jail without cause.

**Statutory Basis for Racial Discrimination Claims Under 42 U.S.C. § 1981**

**60.** Section 1981 of Title 42 of the U.S. Code prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." The statute has been interpreted broadly to prohibit discrimination in all aspects of legal proceedings and interactions with government officials. In *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975), the Court affirmed that § 1981 applies to discriminatory actions by state actors.

**61.** Defendants' racially motivated actions against Plaintiff denied him the full enjoyment of rights under the law, including the right to be free from arbitrary detention and excessive force. Defendants' conduct not only deprived Plaintiff of his liberty without cause but did so in a way that marginalized him based on race, violating both § 1981 and the Equal Protection Clause.

**Discriminatory Treatment and Selective Prosecution**

**62.** Plaintiff's prosecution was tainted by racial animus, with Defendants pursuing felony charges against him based on fabricated evidence and without probable cause. In *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), the Supreme Court held that discriminatory enforcement of law based on race is unconstitutional. The prosecutorial decisions in Plaintiff's case reflect a pattern of selective enforcement designed to penalize him more harshly due to his race, as shown by the fabricated felony charge, which lacked legal basis and violated his right to equal protection.

**63.** Plaintiff seeks compensatory damages for the psychological and reputational harm caused by Defendants' discriminatory actions, as well as punitive damages to deter such conduct. Plaintiff further requests declaratory relief to affirm that the racial discrimination he endured violated his constitutional rights. This relief is essential to address the racial animus that contributed to the unlawful actions taken against him, and to prevent similar discrimination in the future.

**64.** The Plaintiff, Demario Lashun Hankins, stands before this Court not only as a litigant but as a decorated veteran and law-abiding citizen whose life has been shattered by the unlawful actions of state actors sworn to uphold justice. The deliberate, discriminatory, and unconstitutional conduct by the Defendants—from the abusive treatment at the hands of Officer Studdard to the malicious prosecution by state attorneys—has inflicted irreparable damage on Plaintiff's life, his freedom, his mental well-being, and his reputation. Defendants' actions represent a gross abuse of authority, fundamentally contradicting the protections guaranteed to every citizen under the United States Constitution. The violations committed by Defendants have not only deprived Plaintiff of his basic rights but have also undermined public confidence in a fair and just legal system.

**65.** Through their conduct, the Defendants have demonstrated a disregard for the rule of law and the principles of equality and justice that are foundational to this nation. They failed to respect Plaintiff's due process rights, subjected him to racial discrimination, denied him fair access to legal protections, and coerced him into accepting a conviction for a crime he did not commit. Each of these actions, individually and collectively, constitutes a clear violation of

Plaintiff's constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Such egregious misconduct by state officials must be addressed decisively to prevent similar abuses from being inflicted upon others.

**66.** Plaintiff respectfully calls on this Court to issue a judgment that acknowledges the severe harm he has suffered and restores his dignity and rights. The relief sought in this case—declaratory, injunctive, compensatory, and punitive—is not merely for Plaintiff's benefit; it is essential to send a message to the Defendants and to all state actors that the abuse of power, racial bias, and the disregard for constitutional rights have no place in a system built on justice. Such a ruling would reaffirm the importance of holding state actors accountable when they overstep their lawful authority and trample upon the rights of individuals they are entrusted to protect.

**67.** In light of the extraordinary and egregious nature of the violations, Plaintiff seeks a complete expungement of the felony conviction, an end to the probation sentence imposed under duress, and full compensatory damages to address the extensive harm inflicted. Additionally, punitive damages are warranted to serve as a deterrent, ensuring that no other citizen faces the violations and abuses Plaintiff endured. The Court's judgment in favor of Plaintiff would uphold the principles of justice, vindicate his rights, and restore the integrity of a legal system that promises equal protection under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

1. **Declaratory Relief**: A declaration that Defendants' conduct violated Plaintiff's constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.
2. **Injunctive Relief**: An order expunging the felony conviction and terminating the probation sentence imposed as a result of Defendants' unconstitutional actions.
3. **Compensatory Damages**: An award to Plaintiff for damages suffered, including physical injuries, emotional trauma, reputational damage, and the severe economic losses arising from Defendants' actions in the amount of $1,750,000.00.
4. **Punitive Damages**: An award of punitive damages against Defendants, as appropriate, to deter future violations of constitutional rights by state actors.
5. **Costs and Fees**: An award of all costs and fees associated with this action, including attorney's fees pursuant to 42 U.S.C. § 1988 in the amount of $50,000.00.
6. **Any Further Relief**: Grant any other relief the Court deems just, proper, and equitable in the pursuit of justice.
7. **Demand for Jury Trial:** Jury Trial Demanded in accordance with Rule 38 and Rule 39.

## CONCLUSION

In conclusion, Plaintiff urges this Court to recognize the profound violations of his constitutional rights and the substantial harm he has endured. As a decorated veteran and an individual with no prior criminal history, Plaintiff has faced an unfathomable ordeal that has left his life, career, and reputation irrevocably scarred. Plaintiff's quest for justice is not just for

himself but for the preservation of a legal system that promises fairness, equality, and accountability. The restoration of his rights, along with the compensatory and punitive relief sought, would not only compensate for his suffering but also uphold the principles of due process, equal protection, and respect for human dignity enshrined in the Constitution.

Plaintiff therefore respectfully requests that this Court find in his favor, grant the relief sought, and, by doing so, reaffirm the bedrock principles of justice, accountability, and equality that guide our nation's laws and institutions.

**Respectfully Submitted,**

Demario Hankins
Demario Hankins
535 Norton Avenue
Nashville, TN 37207
(615) 500-6569
demariolhankins@gmail.com

**Date**: November 22nd, 2024

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| Demario Lashun Hankins,<br>also known as Demar Bey,<br><br>Plaintiff,<br><br>v.<br><br>William J. Bryant, Richard Turner,<br>Jeffie Walker, Penny Kilcrease,<br>Correctional Officer Studdard,<br>Trooper Dale Young,<br>Judge Thomas Potter,<br>Prosecutor David Cotton, and the<br>Miller County Jail,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.____________________ |

**<u>Certificate of Service</u>**

I, Demario Hankins, do hereby certify that I have caused a true and correct copy of the foregoing *Complaint for Damages and Injunctive Relief* to be mailed to the following parties, by placing the same in the U.S.P.S.Postage Prepaid, on the date affixed below:

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| Demario Lashun Hankins,<br>also known as Demar Bey,<br><br>*Plaintiff,*<br><br>v.<br><br>William J. Bryant, Richard Turner,<br>Jeffie Walker, Penny Kilcrease,<br>Correctional Officer Studdard,<br>Trooper Dale Young,<br>Judge Thomas Potter,<br>Prosecutor David Cotton, and the<br>Miller County Jail,<br><br>*Defendants* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.____________________ |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S COMPLAINT**

## I. Introduction

This Memorandum of Law is submitted in support of Plaintiff's Complaint, which asserts violations of constitutional rights under 42 U.S.C. § 1983 and related statutes. The Plaintiff, a decorated military veteran with no prior criminal record, endured a series of unlawful actions, including false imprisonment, excessive force, malicious prosecution, denial of medical care, and racial discrimination. These violations, committed under color of state law, infringe upon the Plaintiff's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights.

This case presents a compelling instance of systemic abuse of authority, where law enforcement officers and other state actors colluded to violate Plaintiff's civil rights. The Plaintiff respectfully requests that this Court grant the relief sought, including declaratory, injunctive, compensatory, and punitive damages, to remedy the egregious harm caused by the Defendants' unconstitutional conduct.

## II. Legal Standard

Under 42 U.S.C. § 1983, individuals may seek relief when a person acting under color of state law deprives them of federally protected rights. To prevail, the Plaintiff must demonstrate:

1. The violation of a constitutional or federally protected right; and
2. That the violation occurred under color of state law (*West v. Atkins*, 487 U.S. 42, 48 (1988)).

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the claims arise under federal law, and venue is proper under 28 U.S.C. § 1391(b), as the events occurred within this district.

**III. Argument**

**A. The Defendants Violated Plaintiff's Right to Be Free from Excessive Force (Count I)**

The right to be free from excessive force is enshrined in the Eighth and Fourteenth Amendments to the United States Constitution. Excessive force claims involving detainees are assessed under an objective reasonableness standard, as articulated by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Under this standard, courts consider several factors to determine whether the use of force violated constitutional protections:

1. The need for the application of force;
2. The relationship between that need and the amount of force used;
3. The extent of the injury inflicted; and
4. Whether the force was applied maliciously or in good faith to maintain order.

In *Kingsley*, the Court emphasized that force used against pretrial detainees must be "objectively reasonable," considering the circumstances at the time of the incident. Unlike convicted prisoners, pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment, which prohibits any punishment without due process of law (*Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

In this case, Correctional Officer Studdard's actions were clearly excessive and malicious. The premeditated assault involved multiple uses of pepper spray, physical blows, and continued aggression after Plaintiff was incapacitated. Studdard positioned another inmate in the booking room to assist in what appeared to be a contrived and orchestrated confrontation, further demonstrating his intent to harm rather than maintain order. Such conduct is categorically unreasonable, as it served no legitimate penological purpose and was executed with malicious intent.

The use of pepper spray in particular, without any legitimate need, constitutes excessive force. Courts have consistently held that the use of pepper spray is unreasonable when deployed against individuals who are restrained or not posing a threat. In *Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008), the Fourth Circuit ruled that pepper spray used on a detainee who was non-threatening and compliant constituted excessive force. Similarly, in *Griffin v. Hardrick*, 604 F.3d 949 (6th Cir. 2010), the Court found that pepper spray deployment against a nonviolent detainee was unjustified and violated the detainee's constitutional rights.

Studdard's premeditated conduct mirrors these precedents. Plaintiff was not resisting, was non-threatening, and was simply seeking clarification on why he was being fingerprinted. The assault inflicted severe physical injuries, including temporary blindness, and caused lasting psychological trauma.

The malicious nature of Studdard's actions is further highlighted by the lack of any effort to de-escalate the situation or respond proportionately to Plaintiff's behavior. Courts have repeatedly emphasized the importance of proportionality in assessing excessive force claims. In *Hope v. Pelzer*,

536 U.S. 730 (2002), the Supreme Court held that the gratuitous infliction of harm on restrained individuals violates clearly established rights under the Eighth and Fourteenth Amendments. Studdard's actions were not only gratuitous but also premeditated, making them a clear violation of Plaintiff's constitutional protections.

Plaintiff seeks both compensatory and punitive damages for these violations. Compensatory damages are warranted for the physical injuries, psychological trauma, and loss of dignity caused by the assault. Punitive damages are appropriate under *Smith v. Wade*, 461 U.S. 30 (1983), which allows punitive damages when a defendant's conduct demonstrates reckless or callous indifference to federally protected rights. Studdard's actions, driven by malice and disregard for Plaintiff's rights, meet this standard.

**B. The Defendants Engaged in False Imprisonment Without Probable Cause (Count II)**

False imprisonment is a deprivation of liberty without lawful justification and violates the Fourth Amendment's prohibition on unreasonable seizures. In *Manuel v. City of Joliet*, 580 U.S. 357 (2017), the Supreme Court reaffirmed that a detention lacking probable cause constitutes a Fourth Amendment violation, even when supported by formal legal proceedings.

In Plaintiff's case, Trooper Young's actions in transporting him across state lines for minor traffic infractions—obstruction of governmental operations, speeding, and use of alternative identification—lacked the necessary probable cause to justify detention. The offenses cited are minor violations typically resolved with a citation or warning, rather than arrest and transport to a detention facility. Trooper Young's actions contravened the principle articulated in *Dunaway v. New York*, 442 U.S. 200 (1979), which held that arrests must be supported by probable cause and must not exceed the necessary scope of law enforcement authority.

Moreover, the prolonged detention at Miller County Jail without booking or access to legal counsel further exacerbated the violation of Plaintiff's rights. In *Baker v. McCollan*, 443 U.S. 137 (1979), the Supreme Court held that detention without procedural safeguards, such as access to counsel or judicial review, constitutes a deprivation of liberty under the Fourth and Fourteenth Amendments. Defendants' failure to book Plaintiff or provide him with a phone call violated these procedural protections, leaving him isolated and unable to challenge the legality of his detention.

The Due Process Clause of the Fourteenth Amendment protects individuals from prolonged detention without judicial oversight. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court emphasized that "freedom from bodily restraint" is a core liberty interest and that prolonged detention without due process constitutes a violation of substantive and procedural due process rights. Plaintiff's detention at Miller County Jail—without explanation or access to legal resources—directly contravenes this principle.

Additionally, Trooper Young's decision to arrest and detain Plaintiff appears motivated by racial bias, further undermining the legitimacy of the detention. Racial profiling in traffic stops has been consistently condemned as unconstitutional, as established in *Whren v. United States*, 517 U.S. 806 (1996). Plaintiff's use of alternative identification, though lawful, was used as a pretext for arrest, reflecting discriminatory practices that violate equal protection under the law.

Plaintiff seeks compensatory damages for the distress, humiliation, and economic consequences of his false imprisonment. Punitive damages are also warranted to deter state actors from engaging in similar violations of constitutional rights.

**C. The Defendants Maliciously Prosecuted Plaintiff Without Probable Cause (Count III)**

Malicious prosecution under 42 U.S.C. § 1983 arises when state actors initiate criminal proceedings without probable cause and with improper motives, resulting in a deprivation of liberty. The Supreme Court has recognized that malicious prosecution claims may implicate Fourth Amendment rights when an individual is unlawfully subjected to criminal charges (*Albright v. Oliver*, 510 U.S. 266, 274 (1994)). In this case, the Defendants charged Plaintiff with felony Aggravated Battery based on fabricated evidence and retaliatory motives, demonstrating a clear violation of constitutional protections.

The elements of a malicious prosecution claim under § 1983 include:

1. The initiation of criminal proceedings by state actors;
2. The absence of probable cause;
3. Malicious intent or improper purpose; and
4. A deprivation of liberty consistent with the Fourth Amendment.

Each of these elements is satisfied in Plaintiff's case.

**Initiation of Criminal Proceedings Without Probable Cause**

Defendants initiated felony charges against Plaintiff without any factual or legal basis. The alleged incident was precipitated by Correctional Officer Studdard's use of excessive force, yet the fabricated reports submitted by Studdard and Deputy Pendergrass falsely portrayed Plaintiff as the aggressor. This narrative, contradicted by audio and video evidence, served as the foundation for the baseless charges. In *Hartman v. Moore*, 547 U.S. 250, 256 (2006), the Supreme Court held that prosecution motivated by retaliatory animus or improper intent violates constitutional rights. Here, the charges against Plaintiff were intended to justify Studdard's actions and shield him from accountability, rather than to pursue legitimate law enforcement objectives.

**Improper Purpose and Malicious Intent**

The Defendants' actions reflect malicious intent, as they sought to retaliate against Plaintiff for resisting Studdard's unlawful and excessive use of force. The malicious nature of the prosecution is further demonstrated by the coercive tactics employed during Plaintiff's detention, including threats of prolonged incarceration and denial of medical care. In *Napue v. Illinois*, 360 U.S. 264 (1959), the Supreme Court held that the use of false evidence or testimony by state actors violates due process. The fabricated evidence in Plaintiff's case mirrors this precedent, as Defendants intentionally distorted the facts to secure a conviction.

**Coerced Plea Agreement**

Plaintiff's coerced plea agreement is another hallmark of malicious prosecution. Facing unbearable conditions and denied access to counsel or resources to mount an adequate defense, Plaintiff accepted a plea under duress. In *Brady v. United States*, 397 U.S. 742 (1970), the Supreme Court ruled that a guilty plea must be voluntary, knowing, and intelligent. A plea made under coercion or undue influence is constitutionally invalid. Plaintiff's plea was the product of duress and reflects the Defendants' broader scheme to deprive him of a fair legal process.

**Deprivation of Liberty**

The malicious prosecution resulted in Plaintiff's wrongful conviction and subsequent probation sentence, depriving him of liberty and causing lasting harm. This deprivation is directly attributable to the Defendants' misconduct and their reliance on fabricated evidence and improper legal processes.

Plaintiff seeks compensatory damages for the emotional, financial, and reputational harm caused by this malicious prosecution. Additionally, punitive damages are appropriate under *Smith v. Wade*, 461 U.S. 30 (1983), as the Defendants' actions demonstrate callous indifference to Plaintiff's rights and the integrity of the justice system.

**D. The Defendants Violated Plaintiff's Procedural and Substantive Due Process Rights (Count IV)**

The Fourteenth Amendment guarantees individuals the right to due process, which encompasses both procedural and substantive protections against arbitrary and oppressive state actions. The Defendants violated these rights through a series of deliberate and egregious actions, including the denial of legal counsel, denial of medical care, and coercion of a plea agreement under duress.

**Procedural Due Process Violations**

Procedural due process requires that state actors provide individuals with adequate safeguards when depriving them of life, liberty, or property. In *Moran v. Burbine*, 475 U.S. 412 (1986), the Supreme Court held that the denial of access to legal counsel during critical stages of criminal proceedings constitutes a violation of procedural due process. Here, Defendants denied Plaintiff access to legal counsel and failed to provide him with the resources necessary to challenge his detention and charges.

Additionally, the denial of medical care following Studdard's assault represents another procedural due process violation. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to an individual's serious medical needs constitutes a violation of the Eighth and Fourteenth Amendments. Plaintiff, suffering from physical injuries and temporary blindness, requested medical attention but was denied care, further compounding the harm caused by Defendants' actions.

**Substantive Due Process Violations**

Substantive due process protects against state actions that are arbitrary, oppressive, or egregiously unfair. In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court held that conduct that "shocks the conscience" violates substantive due process. The Defendants' actions—particularly Studdard's premeditated assault and the denial of basic rights during detention—constitute conscience-shocking behavior.

**Coercion into a Plea Agreement**

The coerced plea agreement reflects a broader violation of Plaintiff's due process rights. In *Boykin v. Alabama*, 395 U.S. 238 (1969), the Supreme Court held that due process requires a record affirmatively showing that a guilty plea was voluntary and made with a full understanding of the consequences. Plaintiff's plea, made under duress and without access to legal counsel, fails this standard and is constitutionally invalid.

Plaintiff seeks both compensatory and punitive damages for these violations, as well as injunctive relief to invalidate the coerced plea agreement and expunge the resulting conviction.

**E. The Defendants' Actions Were Racially Discriminatory (Count V)**

Racial discrimination in arrests and detention violates the Equal Protection Clause of the Fourteenth Amendment and statutory protections under 42 U.S.C. § 1981. The Defendants' actions reflect clear racial bias, as Plaintiff was targeted based on his race and the use of alternative identification during a traffic stop.

**Racial Profiling and Equal Protection Violations**

The Supreme Court in *Whren v. United States*, 517 U.S. 806 (1996), recognized that racial profiling in traffic stops violates constitutional rights when law enforcement's actions are motivated by race rather than legitimate public safety concerns. Trooper Young's decision to detain Plaintiff for minor traffic infractions and transport him across state lines appears motivated by racial bias, as the cited offenses did not warrant arrest or prolonged detention.

**Selective Prosecution**

The fabricated felony charges against Plaintiff demonstrate selective prosecution, a form of racial discrimination prohibited under *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). In *Yick Wo*, the Supreme Court held that discriminatory enforcement of the law based on race violates the Equal Protection Clause, even when the laws themselves are neutral. The decision to escalate minor infractions into felony charges reflects the Defendants' intent to punish Plaintiff more harshly due to his race.

**Systemic Discrimination**

The Defendants' actions are part of a broader pattern of systemic discrimination within law enforcement and the criminal justice system. Racial disparities in traffic stops, arrests, and

prosecutions have been widely documented, and Plaintiff's case exemplifies these disparities. By targeting Plaintiff based on racial bias and fabricating charges to justify their actions, the Defendants violated his right to equal protection under the law.

Plaintiff seeks compensatory and punitive damages to address the harm caused by this discrimination. Declaratory and injunctive relief are also warranted to prevent further violations of Plaintiff's constitutional rights.

## IV. Additional Legal Considerations

### A. Injunctive Relief is Necessary to Halt Continuing Harm

Plaintiff's probation continues to impose ongoing harm, including employment limitations, travel restrictions, and reputational damage. Courts routinely grant injunctive relief to halt unconstitutional penalties while a case is litigated. Under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), a party seeking injunctive relief must demonstrate irreparable harm, likelihood of success on the merits, balance of equities, and public interest. Plaintiff satisfies all these criteria, justifying an injunction to stay the probation sentence.

### B. The Court Should Consider Exemplary Damages to Deter Future Violations

Defendants' egregious conduct justifies an award of punitive damages to deter similar abuses. In *Smith v. Wade*, 461 U.S. 30 (1983), the Supreme Court held that punitive damages are appropriate when a defendant's actions reflect reckless or callous disregard for constitutional rights. The premeditated assault by Studdard, combined with systemic procedural violations, warrants such damages.

## V. Conclusion

The Defendants' actions—ranging from false imprisonment to malicious prosecution—represent egregious violations of Plaintiff's constitutional rights. These abuses of authority inflicted profound harm, including physical injury, emotional trauma, economic loss, and reputational damage. The Plaintiff seeks a declaratory judgment recognizing these violations, injunctive relief to halt his probation, compensatory damages for the harm suffered, and punitive damages to deter similar conduct.

This Court's intervention is necessary to uphold the rule of law and protect the constitutional rights of individuals subjected to unlawful state actions.

**Respectfully Submitted,**
**Demario Lashun Hankins**

Demario Hankins
535 Norton Avenue
Nashville, Tennessee 37207

7022 2410 0000 4491 3333

Retail

UNITED STATES POSTAL SERVICE®

72701

RDC 03

C5

Western District of Arkansas
Fayetteville Division
Attention: U.S. Clerk
35 East Mountain, Room 510
Fayetteville, Arkansas 72701-5354